NOTICE

Decision filed 07/16/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230357-U

NO. 5-23-0357

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-1033 |
| | ) | |
| DAVID SCHEURICH, | ) | Honorable |
| | ) | Adam M. Dill, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Moore and Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: Cause remanded where the circuit court erred by denying defendant's petition seeking additional sentencing credit without holding a hearing.

¶ 2    Defendant, David Scheurich, appeals from the Champaign County circuit court's denial of his motion for an order *nunc pro tunc* seeking additional presentence custody credit. On appeal, defendant argues that the circuit court erred by denying his petition seeking additional sentencing credit without holding a hearing to determine whether he was due additional credit. For the reasons that follow, we agree and remand with directions.

1

¶ 3                                    I. Background

¶ 4      On August 26, 2021, the State charged defendant by information with aggravated driving under the combined influence of alcohol and drugs. 625 ILCS 5/11-501(a)(5) (West 2020). Count II charged defendant with driving while license revoked. *Id.* § 6-303(a).

¶ 5      On November 7, 2022, the parties proceeded to a guilty plea hearing on defendant's pending charges in 19-CF-777, 21-CF-1033, and 22-CF-1128. Defendant pled guilty to one count of aggravated driving under the influence in case No. 21-CF-1033.[1] As part of the plea agreement, the State dismissed count II and dismissed the charges in 22-CF-1128. There was no agreement on sentencing.

¶ 6      On January 26, 2023, the circuit court sentenced defendant to six years in prison followed by one year of mandatory supervised release. At the sentencing hearing, the presentence reports were amended to reflect 79 days of presentence custody credit in case No. 19-CF-777. Pursuant to the sentencing order, defendant received zero days of presentence custody credit in the instant case (21-CF-1033).

¶ 7      On February 6, 2023, defendant filed a *pro se* motion for an order *nunc pro tunc* seeking 18 months of sentence credit for his participation in moral reconation therapy and floor work sheet program while in presentence custody. Defendant completed the programs while in the Champaign County jail.

¶ 8      On March 7, 2023, the circuit court denied the motion without holding a hearing. In a docket entry, the court explained that "the completed programs cited in the motion do not qualify for additional jail credit pursuant to the applicable Illinois Law." This appeal followed.[2]

_____

[1]On the same date, defendant also pled guilty to one count of aggravated DUI in case No. 19-CF-777. The circuit court ordered the sentences on the two cases to be served consecutively. The instant appeal only involves defendant's conviction and sentence in case No. 21-CF-1033.
      [2]Defendant appeals the court's judgment denying his motion for order *nunc pro tunc*, entered on

2

¶ 9                                    II. Analysis

¶ 10    On appeal, defendant argues that he was entitled to a hearing to determine how many days

of sentence credit he is entitled to. Defendant argues that he completed moral reconation therapy

while incarcerated in the Champaign County jail awaiting his plea and sentencing. He further

argues that he performed work as an "evening floor man" during this time, and therefore he is

entitled to additional sentence credit under section 3-6-3(a)(4)(A) of the Unified Code of

Corrections (730 ILCS 5/3-6-3(a)(4)(A) (West 2020)). The State argues that by entering into a

plea agreement, defendant forfeited any claim of error as to his sentence. For the reasons that

follow, we reverse.

¶ 11    A circuit court's jurisdiction to modify its judgment, or later the sentence, generally

terminates after 30 days, but it has continuing power to correct clerical errors so that the record

conforms to the judgment actually entered. *People v. Flowers*, 208 Ill. 2d 291 (2003). One method

for doing so is an order *nunc pro tunc*, the purpose of which is to correct the record to reflect the

judgment actually rendered. *People v. Denny*, 238 Ill. App. 3d 819, 822 (1992). An order

*nunc pro tunc* may not be used to modify the judgment. *Id.*

¶ 12    Section 3-6-3(a)(4)(A) of the Unified Code of Corrections states the following:

> "[A]ny prisoner who is engaged full-time in substance abuse programs, correctional
> industry assignments, educational programs, work-release programs or activities in
> accordance with Article 13 of Chapter III of this Code, behavior modification programs,
> life skills courses, or re-entry planning provided by the Department under this paragraph
> (4) and satisfactorily completes the assigned program as determined by the standards of the
> Department, shall receive one day of sentence credit for each day in which that prisoner is
> engaged in the activities described in this paragraph. The rules and regulations shall also
> provide that sentence credit may be provided to an inmate who was held in pre-trial
> detention prior to his or her current commitment to the Department of Corrections and

March 16, 2023. Defendant filed a *pro se* late notice of appeal, because his appeal was placed in the prison mail system with an appropriate certification, on April 14, 2023. The notice was received by the appellate court on May 30, 2023, which this court characterized as a motion for leave to file a late notice of appeal. This court allowed late notice of appeal on June 20, 2023. As such, this court has jurisdiction over this appeal.

3

successfully completed a full-time, 60-day or longer substance abuse program, educational program, behavior modification program, life skills course, or re-entry planning provided by the county department of corrections or county jail. Calculation of this county program credit shall be done at sentencing as provided in Section 5-4.5-100 of this Code and shall be included in the sentencing order. The rules and regulations shall also provide that sentence credit may be provided to an inmate who is in compliance with programming requirements in an adult transition center." 730 ILCS 5/3-6-3(a)(4)(A) (West 2020).

¶ 13 In support of his claim of error, defendant relies on *People v. Malone*, 2023 IL App (3d) 210612. However, defendant's reliance on *Malone* is misplaced, where the Third District was expressly overruled by our Illinois Supreme Court in *People v. Wells*, 2024 IL 129402.[3] In fact, both *Malone* and *Wells* are distinguishable from the instant cause, where the outcomes of both *Malone* and *Wells* hinge on *fully negotiated* guilty pleas. In the case before us, defendant did not enter into a fully negotiated plea.

¶ 14 There are at least four types of distinct plea scenarios which can arise when a defendant chooses to enter a plea of guilty. See *People v. Lumzy*, 191 Ill. 2d 182, 185 (2000). First, a defendant may enter an "open" or "blind" plea, wherein the defendant pleads guilty "without receiving any promises from the State in return." *People v. Evans*, 174 Ill. 2d 320, 332 (1996). Under these circumstances, both the State and the defendant may argue for any sentence permitted by statute, and the trial court exercises its full discretion in determining the sentence to be imposed. *Lumzy*, 191 Ill. 2d at 185.

---

[3]In *People v. Wells*, 2024 IL 129402, ¶ 28, the Illinois Supreme Court expressly states the following:

"Finally, we overrule the appellate court decisions relied on by Wells to the extent that they are inconsistent with our decision. See *People v. Ford*, 2020 IL App (2d) 200252, ¶ 28 ('[B]ecause the record does not conclusively show that the parties agreed to exclude such credit, we vacate the trial court's denial of the Rule 472 motion.'); *People v. Malone*, 2023 IL App (3d) 210612, ¶ 19 ('[W]here the record does not conclusively show that the parties agreed to exclude credit as part of the plea agreement, the circuit court should not deny a defendant's motion to amend the mittimus to reflect the credit.'). Contrary to these cases, the presumption runs in favor of enforcing the specific terms of a plea deal that is a complete and final expression of the parties' agreement."

¶ 15    In contrast to an open guilty plea where no agreement has been reached between the defendant and the prosecution, a defendant may "negotiate" a plea of guilty with the State. *Id.* A defendant may enter into a "fully" negotiated plea of guilty, in which he agrees to plead guilty in exchange for the State's dismissal of charges and a specific sentencing recommendation by the State. See *id.*

¶ 16    A second type of "negotiated" plea occurs where a defendant enters a plea of guilty as a result of an agreement between defendant and the State solely as to charging. See *id.* at 187. Under those circumstances, a defendant may plead guilty in exchange for the State's agreement to dismiss certain charges or reduce the original charge to a lesser offense. *People v. Diaz*, 192 Ill. 2d 211, 220 (2000). However, the plea negotiations do not include any agreement between the State and the defendant with regard to sentencing. *Id.*

¶ 17    This type of plea agreement was addressed in *Lumzy*, 191 Ill. 2d 182. In *Lumzy*, the State agreed to drop a charge against the defendant in exchange for the defendant pleading guilty to another charge. However, the plea agreement was silent as to the sentence that defendant would receive. The *Lumzy* court held that "where the record is clear that absolutely no agreement existed between the parties as to defendant's sentence," a defendant is not required to withdraw his guilty plea as a prerequisite to challenging his sentence. *Id.* at 187; see also *Diaz*, 192 Ill. 2d at 221.

¶ 18    A third type of "negotiated" guilty plea occurs where a defendant pleads guilty in exchange for the State's agreement to dismiss other pending charges and make sentencing concessions. See *Lumzy*, 191 Ill. 2d at 185-86. Under these circumstances, the State's ability to argue for the full range of penalties provided for in the Unified Code of Correctionsis constrained by the parameters of its agreement with the defendant. *Diaz*, 192 Ill. 2d at 221-22.

¶ 19    Here, defendant pled guilty to one count of aggravated driving under the influence in case No. 21-CF-1033. As part of the plea agreement, the State dismissed count II and dismissed the charges in 22-CF-1128. There was no agreement on sentencing. As such, this plea falls into the second type of "negotiated" plea discussed in *Lumzy* and *Diaz*.

¶ 20    In this case, defendant entered a plea of guilty as a result of an agreement between defendant and the State solely as to charging. However, the negotiation did not include any agreement between the State and the defendant with regard to sentencing. Under these circumstances, like in *Lumzy*, defendant was not required to withdraw his guilty plea. "[T]he sentence did not go 'hand in hand' with the plea," because the "State did not make any facet of sentencing an element of its bargain with defendant." *Lumzy*, 191 Ill. 2d at 189 (Freeman, J., specially concurring). Therefore, where defendant did not enter into a fully negotiated plea, the State's forfeiture argument fails.

¶ 21    Deficiencies in the parties' arguments notwithstanding, turning to the merits, we find that this matter should be remanded to the circuit court for a more thorough hearing pursuant to Illinois Supreme Court Rule 472 (eff. May 17, 2019). Pursuant to Illinois Supreme Court Rule 472, the "circuit court retains jurisdiction to correct the following sentencing errors at any time following judgment and after notice to the parties, including during the pendency of an appeal, on the court's own motion, or on motion of any party: *** (3) Errors in the calculation of presentence custody credit." Ill. S. Ct. R. 472(a)(3) (eff. May 17, 2019).

¶ 22    In this case, the record reflects that on January 26, 2023, the circuit court sentenced defendant to six years in prison followed by one year of mandatory supervised release. At the sentencing hearing, the presentence reports were amended to reflect 79 days of presentence

6

custody credit in case No. 19-CF-777. Pursuant to the sentencing order, defendant received zero days of presentence custody credit in the instant case (21-CF-1033).

¶ 23    On February 6, 2023, defendant filed a *pro se* motion for an order *nunc pro tunc* seeking 18 months of sentence credit for his participation in moral reconation therapy and floor work sheet program while in presentence custody. On March 7, 2023, the circuit court denied the motion without holding a hearing. In a docket entry, the court explained that "the completed programs cited in the motion do not qualify for additional jail credit pursuant to the applicable Illinois Law."

¶ 24    Section 5-4.5-100(c-5) of the Unified Code of Corrections requires the sentencing court to give a defendant credit for "successfully completing county programming while in custody prior to imposition of sentence at the rate specified in Section 3-6-3 (730 ILCS 5/3-6-3)." 730 ILCS 5/5-4.5-100(c-5) (West 2020). Section 3-6-3(a)(4)(A) states, in part, that:

> "The rules and regulations shall also provide that sentence credit may be provided to an inmate who was held in pre-trial detention prior to his or her current commitment to the Department of Corrections and successfully completed a full-time, 60-day or longer substance abuse program, educational program, behavior modification program, life skills course, or re-entry planning provided by the county department of corrections or county jail. Calculation of this county program credit shall be done at sentencing as provided in Section 5-4.5-100 of this Code and shall be included in the sentencing order." *Id.* § 3-6-3(a)(4)(A).

¶ 25    Here, the record fails to reflect that the circuit court gave full consideration to defendant's request for additional sentence credit. Defendant concedes as much, noting that the record before us is not sufficient to allow a reviewing court to conclusively determine whether and how much credit, if any, defendant was due. The limited record, including a lack of basis for the State's objection and lack of findings by the circuit court, precludes us from a definitive determination of whether defendant is entitled to sentencing credit pursuant to section 5-4.5-100. We thus agree with defendant that this case should be remanded to the circuit court to timely consider whether respondent is entitled to sentence credit for the time spent in moral reconation therapy and work

7

as an "evening floor man" pursuant to section 5-4.5-100 of the Unified Code of Corrections. See 730 ILCS 5/5-4.5-100 (West 2020).

¶ 26   For these reasons, we reverse the order denying defendant's motion and remand the case for the circuit court to conduct a hearing to determine whether defendant is entitled to additional credit. For these reasons, we remand to the circuit court for a hearing pursuant to Illinois Supreme Court Rule 472 (eff. May 17, 2019).

¶ 27                              III. Conclusion

¶ 28   For the foregoing reasons, the judgment of the circuit court of Champaign County is reversed and remanded with directions.

¶ 29   Reversed and remanded with directions.